UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LISA M., : | |
|        Plaintiff, : | |
| : | |
|        v. : | C.A. No. 20-471MSM |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|        Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Following a motor vehicle accident on July 27, 2017, Plaintiff Lisa M. applied on September 19, 2018, for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under § 1383(c)(3). She alleged onset as of October 1, 2017,[1] and claimed disability due to traumatic brain injury, neck and shoulder impairments, dizziness, headaches, loss of hearing and vision impairments caused by the accident. Her claims were presented to an administrative law judge ("ALJ"), who found that "post-concussion syndrome" was severe at Step Two, that Plaintiff's neck/shoulder issues, headaches, vertigo, and myofascial pain were not severe and that Plaintiff retained the residual functional capacity ("RFC")[2] to perform unskilled work with limited social interaction and no time pressures. Based on these findings and the testimony of a vocational expert, the ALJ concluded that Plaintiff was not disabled at any relevant time. Following an unsuccessful

---

[1] Although Plaintiff's applications allege that August 1, 2017, was the onset date, Tr. 198, 202, Plaintiff (ECF No. 13 at 2), the Commissioner (ECF 16-1 at 1-2), and the ALJ's opening statement at the hearing and in his decision (Tr. 15, 41) are in agreement that the correct onset date is October 1, 2017. I have relied on their concurrence in this report and recommendation.

[2] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

request for Appeals Council review, the denial by the Commissioner of Social Security ("Commissioner") of Plaintiff's applications became final.

Now pending before the Court is Plaintiff's motion to reverse the decision of the Commissioner. ECF No. 13. She argues that the ALJ's findings are tainted by error, requiring remand. Defendant Acting Commissioner Kilolo Kijakazi ("Defendant") argues that the ALJ properly applied the law to the substantial evidence of record and that any errors are harmless; he has filed a counter motion for an order affirming the decision. ECF No. 16. The motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. Background

On July 27, 2017, Plaintiff Lisa M., a high-school educated woman in her late forties who had been working for five years at Kohl's as a cashier, was in a motor vehicle accident. She was a restrained passenger in a car that was hit on the driver's side. After the accident, Plaintiff was seen in the Kent Hospital emergency department; she denied having had any head injury, no imaging was performed and no acute findings were made; she was discharged with Ibuprofen and a muscle relaxant. Tr. 332; see Tr. 360. A few days later, Plaintiff returned to the emergency department at Kent complaining of neck pain, a sensation of "pressure" in her head and neck and feeling dizzy. Tr. 330. Based on cervical imaging showing possible muscle spasm and mild cervical disc disease, she was sent home with a Lidoderm patch and instructions to follow up with her primary care physician. Tr. 334-35.

In the months following the accident, Plaintiff complained of neck/shoulder pain, head and ear pressure, dizziness, vertigo, blurred vision and hearing loss. Based on these complaints, Plaintiff's treatment team expanded to include: an orthopedist, Dr. William Brennan, whose

examinations of her neck and shoulder resulted in observations of cervical disc disease, with tenderness, mild spasm and range of motion limitations (e.g., Tr. 406-08, 462); an ear/nose/throat specialist, Dr. George Jascewicz, who noted only periodic headaches, no true vertigo and no major hearing fluctuations and opined that her symptoms seemed related to the neck sprain (Tr. 322-23); and a neurologist, Dr. Jonathan Sarezky, who interpreted the MRI he ordered as having "no contributing pathology" and terminated treatment because he found "no focal neurologic features on exam, and she has had normal MRI brain." Tr. 390, 395.

Most of Plaintiff's accident-related treatment was focused on her neck/shoulder sprain. This condition showed some initial improvement in the aftermath of the accident. Tr. 456 (as of November 2017, "therapy . . . is improving the musculoskeletal pain"); Tr. 351 (as of July 2018, "neck and shoulder pain much better"). Nevertheless, Plaintiff did not have total relief from the neck pain and muscle spasms despite physical and occupational therapy and repeated injections at the Warwick Pain Center that began in the summer of 2018. Tr. 482-85. In October 2018, Dr. Brennan ordered a cervical MRI. Tr. 487. According to Dr. Brennan's notes, like the earlier CT scan, this MRI showed cervical disc herniation with some narrowing. Tr. 494. After the MRI, Dr. Brennan's examinations continued to result in observations of normal gait, "some tenderness . . . [m]ild spasm . . . [s]ome limitation with side bending and rotation to the right," Tr. 496, while his treatment plan remained unchanged in that he recommended that Plaintiff continue with injections and her home exercise program, with follow-up appointments with him every three months. Tr. 496, 544. At the last appointment of record with Dr. Brennan, his examination

observations were more benign – just "tender[ness]" and "mild spasm," but he continued to recommend injections and home exercise, with follow-up "in a few months." Tr. 550.³

Throughout the period in issue, Plaintiff also treated with her primary care physician, Dr. Marla Hansel. Regarding Plaintiff's complaints of dizziness and cognitive impairments, Dr. Hansel (in reliance on the neurologist to whom she had referred Plaintiff) opined that Plaintiff's brain MRI was essentially normal with "no concenring [sic] finds on exam." Tr. 355. Regarding Plaintiff's complaints of headaches and facial pain, Dr. Hansel recorded that Plaintiff described her headaches as "not bad, but when noisy or very active," "– takes [A]leve and that seems to work . . . – not migraine like had had in past." Tr. 356; see Tr. 515 (at last appointment of record with Dr. Hansel in February 2019, Plaintiff reports headaches "on and off" and "[A]leve helps"). Dr. Hansel's own examinations were largely normal. E.g., Tr. 360.

In February 2018, alleging that the accident had rendered her unable to work since it happened on July 27, 2017, Plaintiff filed her first set of disability applications *pro se*.⁴ These applications were denied at the initial phase on March 30, 2018, based on the administrative findings of a state agency ("SA") expert physician, Dr. Abraham Colb. Principally based on Dr. Brennan's physical examinations, which as of then reflected pain radiating into the arm and "some light radicular symptoms," Dr. Colb opined that Plaintiff could perform work at the medium exertional level with postural and overhead reaching limits. Tr. 61-71. Plaintiff did not pursue these claims further. Six months later, Plaintiff again applied for DIB and SSI. This time, assisted by legal counsel, she alleged onset as of October 1, 2017, and claimed disability

---

³ Plaintiff apparently saw Dr. Brennan one more time, a day or so before the ALJ hearing. Tr. 42. Her attorney advised that this appointment would not show "anything revolutionary" and the ALJ should not hold up the decision to wait for the record of it. Id. It was not submitted.

⁴ Plaintiff also filed for disability in 2009 and again in 2010. These applications are not relevant to what is in issue before the Court.

4

due to traumatic brain injury, neck and shoulder impairments, dizziness, headaches, loss of hearing and vision impairments. Tr. 85, 198-210.

The records comprising the second set of applications were reviewed by two SA expert physicians (Dr. Donn Quinn and Dr. Charles Kahn); both concluded that "MER does not support a severe somatic impairment," for either the DIB claim or the SSI claim. Tr. 86-87, 101. In making this finding, Dr. Kahn was aware of Plaintiff's receipt of ongoing cervical pain injections at the Warwick Pain Center but concurred with Dr. Quinn in focusing on the lack of acute findings at the time of the accident, the cervical imaging revealing only mild degenerative disc disease, and the lack of "severe objective abnormality" noted either by Dr. Brennan, the orthopedist, or by Dr. Sarezky, the neurologist, including the normal brain MRI. Tr. 86, 101.

In addition to the Quinn/Kahn somatic review of her applications, in light of Plaintiff's claim that she believed she had been impacted cognitively by the accident, the record includes a consulting examination report prepared by an SA expert psychologist, Dr. Louis Turchetta. Tr. 400-05. Dr. Turchetta found average cognitive functioning with some word retrieval difficulties, with no impact on Plaintiff's ability to understand instructions and complete tasks caused by her alleged hearing and vision loss. Tr. 402. He opined that she would be unable to perform work involving complex instructions, but that her judgment (including the ability to make judgments about complex work-related issues), ability to respond to work pressures and social reasoning were intact. Tr. 402-03. To evaluate Plaintiff's mental functioning, an SA expert psychologist (Dr. Jeffrey Hughes) and an SA expert psychiatrist (Dr. Susan Killenberg) both reviewed the file. At both the initial and reconsideration phases, they found that Plaintiff had no severe impairment for the DIB period, but that, for the SSI period, she was limited to simple work without direct interaction with customers and coworkers and with a moderate limitation in her ability to

function within a schedule and be punctual. Tr. 89-90, 104-05. Dr. Killenberg's analysis specifically took Plaintiff's allegations of pain, light/noise sensitivity and cognitive inefficiencies into account. Tr. 104.

Next, Plaintiff's claims were the subject of the hearing before the ALJ. At the beginning of the hearing, the ALJ ruled that the period resolved by the denial on March 29, 2018, of Plaintiff's prior set of claims may be reopened, which allowed Plaintiff to pursue the pending DIB claim looking back to the date of alleged onset of October 1, 2017.[5] Tr. 44. During the hearing, Plaintiff testified that she does not know if she lost consciousness during the motor vehicle accident and that she stopped work because of dizziness, memory issues, difficulty with her right ear and right eye and pain in her neck and shoulder. Tr. 47-48. Throughout the hearing, Plaintiff's attorney asked the ALJ to focus on Plaintiff's allegation of a brain injury, including migraines, dizziness and memory and concentration issues, which Plaintiff testified are the cause of her limitations. Tr. 42, 43, 45, 49, 52. In particular, Plaintiff claimed to have daily headaches that she treats with Aleve, but that twice a week this treatment does not work, and her headaches escalate into migraines that continue for two to three days during which she has to lie down and cannot do anything. Tr. 50-51. Plaintiff also testified that she "still [has] muscle tension in my right shoulder, neck area"; when asked to expand on the impact of her impairments on her ability to perform household chores, as to the neck/shoulder, she testified only that she tries not to use a certain muscle area in her shoulder when lifting, for example, laundry. Tr. 48, 50.

---

[5] Plaintiff's date last insured is December 31, 2017. Therefore, the DIB period in issue for this claim is from onset on October 1, 2017, until the date last insured, December 31, 2017. If the prior denial had not been reopened, Plaintiff would have been barred by the administrative finality of the prior claim from seeking benefits prior to the date that claim was denied, March 29, 2018. That would have foreclosed her from seeking any DIB benefits.

The ALJ found that only "post-concussion syndrome" is severe at Step Two. Tr. 18. With particular reliance on Dr. Kahn, who reviewed the file at the reconsideration phase, he found that Plaintiff's neck (including the trapezial area), headaches, vertigo, and myofascial pain were not severe. Id. For his mental RFC, the ALJ focused on Plaintiff's pain, environmental sensitivities, and cognitive inefficiencies, relying particularly on the report from Dr. Turchetta, and the analysis of that report and the balance of the record performed by Dr. Killenberg. The ALJ found that Plaintiff retained the residual functional capacity RFC to perform simple work with limited social interaction and no time-pressured tasks and concluded that Plaintiff was not disabled at any relevant time. Following an unsuccessful request for Appeals Council review, the ALJ's denial of Plaintiff's applications became final.

## I.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128-131 (1st Cir. 1981). The determination of substantiality is based upon

an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31. If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[6] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not

---

[6] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite only to one set of these regulations.

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

      **B.**     **Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence.  The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  20 C.F.R. § 404.1520c(a).  Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources."  Id.  Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates persuasiveness

9

are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Id. at 5854.

### C. Discounting of Claimant's Subjective Statements

When an ALJ decides not to fully credit a claimant's subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1988). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); see also Sacilowski, 959 F.3d at 441. If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly

discredit such testimony, or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017).

### III.   Analysis

Plaintiff presents the Court with an array of reasons why she claims the ALJ's physical[7] and mental RFC findings are tainted by error that requires remand.  For the reasons that follow, I find that none hold water.

First, Plaintiff argues that that the ALJ erred in ignoring Plaintiff's debilitating migraines as she described them in her hearing testimony and as corroborated by her brain MRI.  ECF No. 13 at 6-7.  Relatedly, she contends that the ALJ should not have relied on the report of Dr. Turchetta, because he erred in opining that the brain "MRI did not reveal any brain abnormalities."  Tr. 401; ECF No. 13 at 5.  She asserts that this error is prejudicial in that the vocational expert confirmed that her testimonial description of these migraines, if credited by the ALJ, would preclude all work.

This argument is entirely belied by the record.  With respect to the MRI, the treating physicians uniformly opined that it does contain findings,[8] but they interpreted these findings as

---

[7] This aspect of Plaintiff's argument is off base.  The ALJ did not formulate a physical RFC because he resolved that aspect of the case at Step Two (although he considered such physical symptoms as pain in fashioning the RFC).  The Commissioner asks the Court to find that Plaintiff has waived any challenge to the ALJ's rejection of her headaches and cervical impairments as severe impairments because those were Step Two findings, which Plaintiff has failed to challenge.  ECF No. 16-1 at 12.  Mindful that courts should ensure a "just outcome" in Social Security disability claims, I decline to do so.  See Pelletier v. Sec'y of Health, Educ. & Welfare, 525 F.2d 158, 161 (1st Cir. 1975).

[8] Plaintiff is right in pointing out that the brain MRI has findings, albeit expressed in language that is beyond the ken of a lay person to interpret.  Tr. 321.  Plaintiff is also right that Dr. Hansel initially used the term "abnormal" to describe the MRI before she followed-up regarding its significance with the neurologist.  Tr. 357.  However, after she did, her treating notes describe the MRI as "imaging normal."  Tr. 355.

11

essentially normal, as Dr. Turchetta described. That is, Dr. Sarezky, the neurologist who ordered the MRI, and Dr. Hansel, the primary care physician who referred Plaintiff to Dr. Sarezky, both characterized this MRI as reflecting essentially normal findings. Indeed, once Dr. Sarezky analyzed the MRI, he advised that Plaintiff had no further need for his services because of her "normal brain imaging and static symptoms." Tr. 355, 395. Thus, there is no error in the ALJ's reliance on Dr. Turchetta's interpretation of the MRI, which is consistent with these treating sources. As to the migraines themselves, the ALJ did not err in discounting Plaintiff's hyperbolic hearing testimony about the headaches because it is directly and repeatedly rebutted by her statements as reflected in the treating record. E.g., Tr. 322-23 (Dr. Jascewicz noted Plaintiff reported only periodic headaches); Tr. 355-56 (Dr. Hansel noted Plaintiff described headaches as "not bad, but when noisy or very active," "– takes aleve and that seems to work . . . – not migraine like had had in past."); Tr. 385 (Dr. Sarezky noted Plaintiff told him "[s]he also has occasional headaches stemming from the back of her head; however, these only occur once every few weeks and respond well to PRN Aleve"); Tr. 515 (Dr. Hansel noted that Plaintiff reports headaches "on and off" and "Aleve helps").

Second, Plaintiff argues that the ALJ should have afforded "controlling weight" to the conclusory opinion of Dr. Brennan, signed on November 27, 2018, which states simply: "she is totally disabled due to her chronic cervical strain diagnosis." Tr. 398. Relatedly, she argues that Dr. Brennan's records support a limitation on overhead reaching, which was recognized by Dr. Colb, the SA non-examining physician who made the administrative medical findings in connection with Plaintiff's prior applications. As to Dr. Brennan's opinion letter, this argument cannot surmount the reality that the "controlling weight" approach is no longer the law – it has been abandoned for claims like this one (filed after March 27, 2017) since the adoption of 20

C.F.R. § 404.1520c(a). Nor can it overcome the well-settled principle that an ALJ may ignore an opinion like the one Dr. Brennan put into his one-sentence letter because it is nothing more than the ultimate conclusion of disability, which the Act unambiguously reserves to the Commissioner. See 20 C.F.R. § 404.1520b(c)(3) (statement that claimant is disabled may be disregarded because that conclusion is reserved to Commissioner).

As to the ALJ's reliance on the administrative medical findings of Dr. Kahn (the reconsideration phase non-examining expert), instead of on the earlier findings of Dr. Colb (the non-examining expert in connection with the prior applications), the ALJ's error in failing to discuss, seemingly ignoring, the Colb opinion is not consequential.[9] See Marden v. Barnhart, No. 00-238-B, 2002 WL 453252, at *2 (D. Me. Mar. 26, 2002) (ALJ's failure to discuss non-examining source opining to limitation is not fatal when there is substantial evidence of record supporting finding that no such limitation exists). Here, the ALJ had such substantial evidence in Dr. Kahn's analysis of the more complete record. Further, to the extent that the Colb opinion was not ignored, it is the ALJ's function to resolve disputes between conflicting evidence; the determination to rely on Dr. Kahn, who performed his review in May 2019 and had access to most of the record, comprising almost two years of treatment following the accident, by contrast with Dr. Colb, who performed his review in March 2018, and saw only the record as developed in the less-than-twelve-month period following the accident, is a determination that is well

---

[9] The ALJ's failure to mention Dr. Colb is an understandable oversight in that Dr. Colb's administrative findings did not become part of the current file until the ALJ granted Plaintiff's request to reopen the prior application during the hearing. Nevertheless, this oversight is error: as required by SSR 17-2p, an ALJ must consider such prior administrative medical findings and articulate how he considered them in the decision. SSR 17-2p: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, 2017 WL 3928306 (Mar. 27, 2017). My finding that this error is harmless is based not only on the ALJ's reliance on Dr. Kahn (as discussed in the text) but also on the reality that Dr. Colb's RFC limitations resulted in the finding that Plaintiff was not disabled. Indeed, Plaintiff has not suggested that the ALJ's failure to include them in Plaintiff's RFC now would have altered the outcome.

13

within the scope of the ALJ's duty and, in this instance, would be well supported by substantial evidence.  See Arrington v. Colvin, 216 F. Supp. 3d 217, 235-36 (D. Mass. 2016), aff'd sub nom. Arrington v. Berryhill, No. 17-1047, 2018 WL 818044 (1st Cir. Feb. 5, 2018) (it is responsibility of ALJ to resolve conflicts of evidence).

Third, Plaintiff contends that the ALJ erred in discounting her subjective complaints, particularly of pain and dizziness.  As to dizziness, Plaintiff's workups by Dr. Jascewicz, the ear/noise/throat specialist, and by Dr. Sarezky, the neurologist, both were focused on her claim of dizziness and balance problems.  Both performed a thorough medical investigation of Plaintiff's complaints; both concluded that there is no objective medical evidence to corroborate such symptoms and no clinical explanation for Plaintiff's perception.  Dr. Jacewicz suggested that Plaintiff's perception of balance and dizziness was likely caused by her neck sprain, Tr. 323, while Dr. Sarezky suggested that lifestyle modifications (such as exercise and healthy eating) might improve her symptoms.  Tr. 395.  Also important is the lack of objective observations of balance issues – Plaintiff's gait was consistently observed by treating providers and was uniformly observed to be normal, with no findings of dizziness or loss of balance.  E.g., Tr. 322 ("[n]ormal gait and good coordination"); Tr. 387 ("[n]ormal tandem walk"); 496 ("Walks with a non-antalgic gait.  Normal heel-to-toe progression").  Thus, Plaintiff's subjective claim of serious dizziness and balance issues is directly rebutted by the medical record.  As to pain, the ALJ carefully and appropriately considered Plaintiff's claims of pain, in contrast to Plaintiff's daily activities and the conservative treatment (including over-the-counter medication and injections for the neck pain) she received.  Most importantly, he relied on the expert findings of Dr. Killenberg, whose RFC is expressly based on her consideration of Plaintiff's claims of pain, environmental sensitivities and cognitive inefficiencies.  Tr. 104.  This approach is consistent

with applicable law and resulted in a credibility finding that is well supported by substantial evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3).

Fourth, Plaintiff asks the Court to reweigh the evidence to reach a different result with respect to the limitations caused by the impairment found by the ALJ to be severe – post-concussion syndrome. For example, despite the ALJ's appropriate reliance on the non-examining physician (Dr. Kahn) at the reconsideration phase, she contends that the ALJ erred in not adding limitations based on the inability to work on ropes, ladders and scaffolds. Similarly, despite the ALJ's appropriate reliance on the interpretation of Dr. Turchetta's test results by the non-examining psychiatrist (Dr. Killenberg) at the reconsideration phase,[10] she contends that the ALJ erred in failing to add work-preclusive limitations based on absences and being off task. I decline to engage in such a prohibited exercise. Colon, 877 F.2d at 153 ("district court simply has no authority to reweigh the evidence and substitute its judgment for that of the Secretary").

At bottom, whether the Court might have come to a different conclusion based on the evidence in this case is beside the point. Rodriguez Pagan, 819 F.2d at 3. Except for one error, which I find to be harmless, the ALJ properly applied the law and relied on substantial evidence for each determination in his decision. I recommend that it be affirmed.

## IV.   Conclusion

I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 16) be GRANTED.

---

[10] This argument also includes the assertion that Dr. Turchetta made inconsistent findings in assessing Plaintiff as unable to follow complex instructions, but able to make judgments on complex issues. There is nothing inherently inconsistent about these findings. Similarly, Plaintiff asserts that Dr. Killenberg's analysis is not reflected in the RFC limitations she incorporated into her functional findings. This too is unfounded – Dr. Killenberg's findings are clear and unambiguous: Plaintiff has established limitations in her ability to consistently attend and concentrate on her work, but that "[s]he does, however, retain the mental capacity" to work, as the ALJ ultimately found in his decision. Tr. 104. Neither argument highlights an error that requires remand.

15

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 28, 2021