UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| LISA M.,<br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner, Social Security Administration,<br>    Defendant. | No. 1:20-CV-00471-MSM-PAS |

O R D E R

Mary S. McElroy, United States District Judge.

  This matter comes before the Court on the plaintiff's Motion to Reverse (ECF No. 13) and the defendant's Motion to Affirm (ECF No. 16) the denial by an Administrative Law Judge ("ALJ") of Disability Insurance Benefits under 42 U.S.C. § 405(g) of the Social Security Act and Supplemental Security Income under § 1383(c)(3). The plaintiff has objected to the Report and Recommendation ("R&R") of Magistrate Judge Patricia A. Sullivan (ECF No. 19) which recommends that the Court deny the plaintiff's Motion to Reverse and grant the defendant's Motion to Affirm. For the following reasons, the Court adopts the Report and Recommendation.

### I. BACKGROUND

  On September 19, 2018, the plaintiff, Lisa M., filed applications for disability insurance benefits and supplemental security income under Title II and Title XVI of

the Social Security Act. (ECF No. 9 at 85.) Ms. M alleged "traumatic brain injury, neck and shoulder impairments, dizziness, headaches, loss of hearing and vision impairments" with an onset date of October 1, 2017. *Id.* Ms. M's applications were initially denied. *Id.* at 121, 132. Thereafter, the plaintiff requested and was granted a hearing before an ALJ. *Id.* at 141, 156.

Following the hearing, during which the plaintiff and a vocational expert testified, the ALJ issued a written decision. *Id.* at 15. The ALJ found that the plaintiff's post-concussion syndrome amounted to a severe impairment but that her "mild degenerative disc disease of the cervical spine, cervicalgia, vertigo, headaches, and myofascial pain syndrome" were non-severe. *Id.* at 18. The ALJ further found that the plaintiff retained the residual functional capacity to perform "simple tasks over the course of routine workday/workweek" with limitations restricting time-pressured tasks and social interaction. *Id.* at 22, 25. Ultimately, the ALJ concluded that the plaintiff was not disabled, as defined in the Social Security Act, between October 1, 2017, and January 31, 2020. *Id.* at 28.

The plaintiff made an unsuccessful request for an Appeals Council review and filed a timely Complaint in this Court seeking judicial review pursuant to 42 U.S.C. § 405(g). Magistrate Judge Sullivan found the ALJ's decision supported by substantial evidence in the record. (ECF No. 18 at 15.)

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "the district judge must determine de novo any part of the magistrate judge's disposition that have been

properly objected to." Fed. R. Civ. P. 72(b)(3). In reviewing the record, however, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Finally, "[q]uestions of law are reviewed de novo. . . ." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citing *Ward v. Comm'r Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000)).

## III. DISCUSSION

The plaintiff puts forth two challenges to the magistrate judge's R&R. First, Ms. M contends that her "migraines should have been considered a severe impairment" and that the standard applied in the R&R "goes above and beyond what is required by the Social Security Regulations" to assess impairment severity. (ECF No. 19 at 2.) Second, Ms. M submits that the ALJ should have given "controlling weight" to Dr. William Brennan's opinion that the plaintiff "is totally disabled due to her chronic cervical strain diagnosis." *Id.* at 3.

### A. First Objection – Severe Impairment

Ms. M's first objection to the R&R is based upon the second of a five-step process required to make a disability claim evaluation. 20 C.F.R. § 404.1520. At this step, an assessment of "the medical severity of [an] impairment" is made. *Id.* More specifically, a disability claimant "must have a severe impairment" which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 CFR § 404.1520(c). The plaintiff maintains that "her migraines should have been considered a severe impairment" because "[a] brain MRI showed nonspecific punctuate [sic] foci of increased T2 signal within the white matter of the

supratentorial brain" which "could represent chronic microvascular ischemic change, foci of demyelination, sequela of vasculitis or *migraine headaches*." (ECF No. 19 at 2) (emphasis in original).  At step two, Ms. M "bears the burden of production and persuasion . . . ." *Sacilowski v. Saul*, 959 F.3d 431, 434 (1st Cir. 2020) (citing *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001)).

In addition to her broad strokes argument that her migraine headaches amounted to a severe impairment, Ms. M argues that because her "subjective complaints of migraines were corroborated by objective medical evidence in the form of an MRI," the ALJ should have imposed limitations, "including noise and light restrictions." (ECF No. 19 at 2.)  Ms. M also suggests that a conflict exists in the record regarding her migraines and their limiting effects. (ECF No. 19 at 2.)  She argues that the ALJ "fail[ed] to resolve material conflicts in the evidence" because there was a question as to "whether some doctors' opinions of 'normal findings' rule[d] out the diagnosis and limiting effects of migraines" and, according to the plaintiff, "[o]ne of [her] doctors could have been called or sent interrogatories to clarify this issue." *Id.* That novel argument, as the defendant points out, was not made in Ms. M's Motion to Reverse.  The Court, therefore, will not entertain it here.[1] Additionally, Ms. M claims the ALJ erred by not setting a "limitation restricting

---

[1] "[I]t is well-settled that 'a legal argument made for the first time in a[] [party's] reply brief comes too late and need not be addressed.'" *U. S. v. Brennan*, 994 F.2d 918, 922 n.7 (1st Cir. 1993) (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 354 (1st Cir. 1992)).

ropes/ladders/scaffolds" in light of the plaintiff's "post-concussion syndrome, which causes dizziness." *Id.* at 3.

In reviewing the record in this case, the Court concurs with the magistrate judge's conclusion regarding the ALJ's step two assessment of the MRI and the plaintiff's subjective complaints of migraine headaches. The MRI to which the plaintiff refers was performed on November 3, 2017. (ECF No. 9 at 326.) On November 8, 2017, Ms. M's primary care physician, Marla R. Hansel, MD, made progress notes on Ms. M's condition which did indicate "abnormal brain MRI." *Id.* at 357. Later, however, on May 30, 2018, and after follow-up appointments with Ms. M's neurologist and orthopedist, Dr. Hansel noted "[p]rior imaging normal. No concerning [sic] finds on exam." *Id.* at 355. Similarly, the plaintiff's neurologist, Dr. Jonathan Sarezky, included in his June 2018 progress notes that Ms. M "has had a normal MRI brain." *Id.* at 395. These conclusions were incorporated by psychologist Dr. Louis Turchetta into a report following his consultative examination of the plaintiff. Dr. Turchetta noted that the "MRI did not reveal any brain abnormalities . . . ." *Id.* at 401.

Magistrate Judge Sullivan considered the plaintiff's argument that the ALJ ignored the testimony she gave about debilitating headaches "as corroborated by her brain MRI," and found it "belied by the record." (ECF No. 18 at 12.) This Court agrees. The record supports the conclusion reached by the ALJ that "there has not been significant documentation of significant . . . dizziness or neurological defects." (ECF No. 9 at 19.) Ms. M's treating physicians, Dr. Hansel and Dr. Sarezky, described

Ms. M's brain MRI as normal, with Dr. Sarezky noting that "there is no contributing pathology on her MRI brain." *Id.* at 390. Indeed, Dr. Sarezky determined that "[g]iven normal brain imaging and static symptoms, no further neurologic testing needed." *Id.* at 395.

With respect to her subjective complaints, the ALJ acknowledged Ms. M's "many complaints related to physical and neurological impairments," although he explained that such "complaints alone do not equate to a finding of disability nor does it equate to a 'severe' impairment." *Id.* at 19. Again, the Court agrees with the conclusion reached by the magistrate judge. The medical record contains statements made by the plaintiff to her treating physicians that indicate her headaches were occasional or intermittent and responded well to medication, which contradict the subjective complaints made during Ms. M's hearing before the ALJ. For example, on August 14, 2017, Dr. Brennan noted that the plaintiff's headache "symptoms are best with use of ibuprofen as well as heat and resting." *Id.* at 406. Similarly, on November 8, 2017, Dr. Hansel noted that plaintiff's headaches were "not bad, but when noisy or very active" and she "takes aleve [sic] and that seems to work" and that the headaches were "not migraine like had in the past . . . just a general headache." *Id.* at 356. On December 7, 2017, Dr. Sarezky described the plaintiff having "occasional headaches stemming from the back of her head; however these only occur once every few weeks and respond well to PRN Aleve." *Id.* at 385. On March 15, 2018, Dr. Sarezky treated Ms. M again and while the plaintiff reported headaches, he noted that they "still respond well to PRN Aleve." *Id.* at 388.

The plaintiff also asks this Court to find that the ALJ erred in failing to add "a limitation restricting ropes/ladders/scaffolds." (ECF No. 19 at 3.)  Ms. M contends that "[t]he objective medical evidence shows that she would have trouble with balance" and the "substantial evidence did not support [the ALJ's] opinion."  *Id.*  Despite the plaintiff's subjective claims of dizziness, the medical record reflects contradictory findings by Ms. M's treating physicians.  As the magistrate judge explained, there is "no objective medical evidence to corroborate" the plaintiff's "claim of dizziness and balance problems." (ECF No. 18 at 14.)  According to Dr. Hansel, the plaintiff had a "[n]ormal gait and good coordination." (ECF No. 9 at 322.)  Dr. Sarezky noted normal coordination as well as "[n]ormal steps, arm swing and turning.  Normal tandem walk."  *Id.* at 387.  Dr. Brennan made a similar assessment on August 7, 2017, noting that plaintiff "[w]alks with a non-antalgic gait.  Normal heel-toe progression."  *Id.* at 435.  Dr. Brennan's assessment remained the same at follow-up appointments months later.  Dr. Brennan saw the plaintiff on November 6, 2017, December 11, 2017, and again on January 26, 2018, and each time he noted "a non-antalgic gait.  Normal heel-toe progression."  *Id.* at 456, 462.  Although Ms. M made subjective complaints of dizziness, the assessments made by her treating physicians do not corroborate those complaints.

The Court finds that the ALJ considered the plaintiff's subjective complaints in light of her MRI and her treating physicians' assessments and reached a conclusion of no severe impairment at step two that is supported by the record in this case.

### B. Second Objection – Controlling Weight

The plaintiff's second objection to the R&R is that controlling weight should have been given to Dr. Brennan's opinion that the plaintiff "is totally disabled due to her chronic cervical strain diagnosis. (ECF No. 19 at 3.)  As the R&R properly explains, however, for cases filed after March 27, 2017, "a treating source's medical opinion" is no longer afforded controlling weight.  20 C.F.R. § 404.1527(d)(2).  After March 27, 2017, deference, "including controlling weight," is no longer given "to any medical opinion(s) or prior administrative medical finding(s), including those from [the applicant's] medical sources."  20 C.F.R. § 404.1520c(a).  The Court agrees with the conclusion reached by the magistrate judge "that the 'controlling weight' approach is no longer the law . . . ."  (ECF No. 18 at 12.)

### IV. CONCLUSION

For the foregoing reasons, the Court adopts the R&R (ECF No. 18) in full.  The plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) is DENIED.  The defendant's Motion the Motion to Affirm the Decision of the Commissioner (ECF No. 16) is GRANTED.

IT IS SO ORDERED:

_____
Mary S. McElroy
United States District Judge
March 30, 2022